85 So.3d 542 (2012)
Oladotun ORUKOTAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D10-1223.
District Court of Appeal of Florida, Fourth District.
April 11, 2012.
Samuel R. Halpern, Fort Lauderdale, for appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Katherine Y. McIntire, Assistant Attorney General, West Palm Beach, for appellee.
*543 MAY, C.J.
A foiled robbery and the defendant's convictions for robbery and kidnapping are the subject of this appeal. The defendant has raised numerous issues.[1] We find only one issue of merit and reverse his conviction and sentence for kidnapping.
The victim and defendant knew each other for approximately a year due to prior drug transactions between the two. On the afternoon of the incident, the victim arranged for his sister to pick him up at his apartment. During a brief phone call, she told him to expect her in about five minutes.
When the victim answered a knock at the door, he heard a gunshot and realized that he had been shot in his left foot. The bullet actually traveled through the door before it struck the victim. Immediately thereafter, the co-defendant entered the victim's apartment brandishing a chrome revolver.
The co-defendant ordered the victim to get on the floor and tasered him. The defendant followed the co-defendant into the apartment with a firearm, wearing a black bandanna over his face. The co-defendant ordered the victim to put his hands behind his back. The victim was tied up with a dog leash and a pillow case was placed over his head. He was told to give them cash and drugs. The victim gave them about one thousand dollars from his pocket and approximately one-half of a pound of marijuana.
Suddenly, there was another rap at the door. The victim told the intruders that it was his sister. The sister and her friend knocked on the door, but did not get a response for about five or ten minutes. The defendant and co-defendant untied the victim and told him to answer the door.
When he opened the door, the co-defendant forced the sister and her friend into the apartment. The sister and her friend were ordered to dump out their purses and to give them everything. They were forced into the bathroom, during which time the defendant was armed and took the friend's cell phone, money, and driver's license.
Inside the bathroom, the co-defendant ordered the sister's friend to tighten the restraints on the victim, and to remain in the bathroom. He then told the victim to be quiet or he might shoot him again. Neither the sister nor her friend was bound. It appears the bathroom door remained unlocked.
The victim's sister testified that the co-defendant rummaged through the apartment while the defendant held them in the bathroom at gunpoint. The sister estimated the entire event lasted approximately fifteen to thirty minutes before law enforcement arrived. The sister's friend estimated they were left unattended for about two to four minutes. The defendant and co-defendant returned to the bathroom and told them the police had arrived. The victim was untied and the pillow case taken off of his head. They were instructed *544 to act as though they were all "hanging out" and "partying together."
Law enforcement saw what looked like a bullet hole in the metal plate on the lower part of the front door. They yelled to open the door and knocked repeatedly without any responsefor somewhere between twenty and forty-five minutes. While pounding on the door, a detective saw someone part the blinds and peek out.
Ultimately, the victim opened the door. He was secured by an officer outside on the landing where the victim explained that he had just been robbed. The victim took off his left shoe and sock, revealing a bullet wound.
The remaining officers detained the others. Law enforcement searched the co-defendant, finding cash and a driver's license belonging to the sister's friend. The police noted a large amount of drugs and paraphernalia around the apartment.
Law enforcement secured a search warrant for the apartment. During the search, they found a backpack that contained the victim's laptop, X-Box, a stun gun, and about 150 grams of marijuana. They found a dog leash in a bathroom. They also found two firearms in the victim's closet, which were identified as the guns used during the commission of the crimes. The victim's sister testified that the robbers put the guns in her brother's closet before law enforcement entered the apartment.
Both the defendant and co-defendant were tried together. The jury convicted the defendant of armed burglary, armed kidnapping of the victim, and three counts of armed robbery. The jury specifically found the defendant actually possessed a firearm during the commission of the armed kidnapping of the victim and the armed robbery of the sister's friend, but did not possess a firearm on the other three counts.
The court sentenced the defendant to eighteen years in prison with a ten-year minimum mandatory term on the robbery and kidnapping charges based on his possession of a firearm. The defendant filed a Renewed and Amended Motion for Judgment of Acquittal, and Motions for Judgment Notwithstanding the Verdict, an Arrest of Judgment, and for New Trial, all of which were denied. The defendant now appeals his convictions and sentences.
The defendant argues there was insufficient evidence to prove the confinement was not merely incidental to the underlying predicate offense of robbery, and that this error is fundamental. The State responds that it introduced sufficient evidence to prove the defendants kidnapped the victim to facilitate their robbery.
We have de novo review of the trial court's order denying the motion for judgment of acquittal. Johnston v. State, 863 So.2d 271, 283 (Fla.2003).
Florida statutory law defines the crime of kidnapping.
(1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.
. . . .
(2) A person who kidnaps a person is guilty of a felony of the first degree, *545 punishable by imprisonment for a term of years not exceeding life....
§ 787.01(1)(a) & (2), Fla. Stat. (2007).
Our supreme court has approved a three-part test for determining when confinement during the commission of another crime constitutes the separate offense of kidnapping.
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Faison v. State, 426 So.2d 963, 965 (Fla. 1983) (alteration in original) (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)); see also Fla. Std. Jury Instr. (Crim.) 9.1.
Our decision is guided by Lewis v. State, 50 So.3d 86 (Fla. 4th DCA 2010). There, we encountered a similar fact pattern. An armed robber entered a check cashing store and robbed the manager at gunpoint. During the robbery, the defendant took the manager to the bathroom and placed her in handcuffs. Id. at 87. When the police arrived, the defendant could uncuff only one of the manager's hands and so he sent a second hostage outside with instructions to tell the police everything was fine. Id. The hostage told the police about the robbery; the defendant fledleaving the manager with only one hand cuffed. Id.
We reversed the kidnapping conviction, finding the crime of kidnapping cannot be established "where the victim's confinement ceases when the accompanying crime ends." Id. at 88. In doing so, we relied on Berry v. State, 668 So.2d 967 (Fla.1996).
In Berry, the defendants entered an apartment, tied one of the victim's hands "behind his back with a hanger" and tied "his feet ... together with a telephone cord. [The victim] then was made to kneel down with his chest over a dining room chair." Id. at 968. Another victim was forced to take the defendants from room to room to reveal the location of valuables. Id. When the robbery had been completed, the defendants tied the second victim's hands behind his back and to his legs, leaving him face down on the floor. Id. The defendants left without freeing the victims.
There, our supreme court refused to add any additional prong to the Faison test even though it admitted that the variety of factual scenarios made the test hard to apply. Id. at 970. Nevertheless, the court seemed to indicate that whether the victim remains confined after the completion of the underlying crime can suggest whether the first and third prongs of the Faison test have been satisfied.
Applying the first prong of the Faison test to the facts of the instant case, we do not believe that the confinement was slight, inconsequential, and merely incidental to the other crime. We construe this prong to mean that there can be no kidnapping where the only confinement involved is the sort that, though not necessary to the underlying felony, is likely to naturally accompany it. For example, if [the defendants] had confined the victims by simply holding them at gunpoint, or if the robbers had moved the victims to a different room in the apartment, closed the door, and ordered them not to come out, the kidnapping conviction could not stand. In both hypotheticals, any confinement accompanying *546 the robbery would cease naturally with the robbery. By contrast, in this case the robbers left the scene of the robbery without untying the victims, thereby leaving them both in a precarious and vulnerable state for a period beyond the robbery. Like the situation where the victim of a forcible felony is barricaded or locked in a room or closet, the confinement continued even after the robbery had ceased. This is not the sort of confinement that is incidental to robbery.
Id. at 969 (emphasis added). The court found the first prong of the Faison test satisfied because the defendants had left the victims bound after completing the robbery.
Subsequent to Berry, we reversed another kidnapping conviction and sentence. Russell v. State, 874 So.2d 1256 (Fla. 4th DCA 2004). We found the defendants' actions of dragging the victim approximately six feet and back into a convenience store during a robbery failed to establish the first prong of Faison, and "was the sort of confinement likely to naturally accompany the underlying crime." Id. at 1258-59. We based our decision on the fact that the victim was not restrained or confined after the completion of the underlying robbery.
Applying the first prong of Faison here, while the defendants bound the victim, put a pillowcase over his head, and placed him in the bathroom, the defendants released the victim twice before the robbery had been completed. Under Berry's analysis, the first prong of Faison is not satisfied. We concede the second prong of Faison is satisfied because the defendant's actions were not inherent in the commission of the robbery. And, again because the defendants untied the victim before the completion of the robbery, the act neither had any significance independent of the robbery nor substantially lessened the risk of detection. In fact, it was the defendants' untying of the victim that led to their detection. In short, the confinement did not "continue[ ] ... after the robbery had ceased." Berry, 668 So.2d at 969. As a result, the third prong of Faison is also unsatisfied. Reviewing the Faison prongs in light of Berry leads us to but one conclusion: the actions taken in this case were insufficient to establish the independent crime of kidnapping.
The dissent claims, however, that Lewis and our majority opinion add more prongs to the Faison test. We respectfully disagree. The Lewis panel did not impose any additional test than that imposed by Faison. We do not do so either. Following Justice Lewis' suggestion, we have applied the Faison test to the facts presented to us and with the guidance of Berry. Quite clearly, the majority and dissent read Berry differently. We see Berry as shedding light on the application of the Faison test. We further disagree with the dissent's suggestion that the Lewis panel would have reached a different conclusion had it articulated what it inherently did applied Faison.
The dissent focuses on whether the confinement "naturally" ceased. It suggests that interruption by law enforcement is not a natural cessation. We suggest the operable word is "cease," whether it is natural or not. While we concede the second prong of Faison is met, all three prongs must be satisfied before a defendant's conviction for kidnapping can be sustained. Under the facts of this case we disagree that the first and third prongs have been satisfied.
The dissent's suggestion that Lewis was wrongly decided also runs afoul of stare decisis. Old Plantation Corp. v. Maule *547 Indus., Inc., 68 So.2d 180, 183 (Fla.1953).[2] We are bound by that decision unless we sit en banc to recede from it.
To take the dissent's position to its logical conclusion, every robbery (or other similar crime) that entails the restraint or confinement of a victim during its commission would result in a kidnapping charge unless the cessation of confinement or restraint was "natural." Were this so, our supreme court would find no need for Faison's three-prong test. See Walker v. State, 604 So.2d 475, 477 (Fla.1992) (citing Faison, 426 So.2d at 965-66) ("Because a literal construction of the kidnapping statute would convert almost every forcible felony into kidnapping, this Court has adopted a three-prong test to determine whether movement or confinement during the commission of another felony is sufficient to justify an additional conviction for kidnapping."). Here, the confinement ended prior to the completion of the robbery. Whether that cessation was natural is of no import.
In sum, because the confinement ceased prior to completion of the robbery, the evidence does not support an independent kidnapping conviction. We reverse the kidnapping conviction and remand the case to the trial court to vacate that conviction and sentence.[3]
Reversed and Remanded.
DAMOORGIAN, J., concurs.
GERBER, J., dissents with opinion.
GERBER, J., dissenting.
I respectfully dissent. Competent, substantial evidence exists to satisfy our supreme court's three-prong test for determining when a confinement, alleged to have been done to facilitate the commission of another crime, amounts to a kidnapping. We should affirm the kidnapping conviction in this case, and should recede en banc from certain rules which this court issued in Lewis v. State, 50 So.3d 86 (Fla. 4th DCA 2010).
In Faison v. State, 426 So.2d 963 (Fla. 1983), our supreme court held:
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Id. at 965 (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)).
*548 The supreme court applied Faison's three-prong test to a robbery situation in Berry v. State, 668 So.2d 967 (Fla.1996). There, the defendant and others entered a man's apartment and robbed him and his friend at gunpoint. The robbers tied up the friend's hands and feet and made him kneel over a chair. Meanwhile, the robbers forced the man who lived in the apartment to walk from room to room to show them where valuable items were located. After the robbers finished removing items from the apartment, one of them tied up that man's hands and legs, leaving him face down on the floor. The robbers then left the apartment without untying the men. One of the men freed himself and, after leaving the apartment to call the police, returned and untied the other man.
The defendant was convicted of armed robbery and kidnapping. This court affirmed the kidnapping conviction. The supreme court approved our decision after applying the three-prong test. Important here is the supreme court's detailed reasoning:
Applying the first prong of the Faison test to the facts of the instant case, we do not believe that the confinement was slight, inconsequential, and merely incidental to the other crime. We construe this prong to mean that there can be no kidnapping where the only confinement involved is the sort that, though not necessary to the underlying felony, is likely to naturally accompany it. For example, if [the robbers] had confined the victims by simply holding them at gunpoint, or if the robbers had moved the victims to a different room in the apartment, closed the door, and ordered them not to come out, the kidnapping conviction could not stand. In both hypotheticals, any confinement accompanying the robbery would cease naturally with the robbery. By contrast, in this case the robbers left the scene of the robbery without untying the victims, thereby leaving them both in a precarious and vulnerable state for a period beyond the robbery. Like the situation where the victim of a forcible felony is barricaded or locked in a room or closet, the confinement continued even after the robbery had ceased. This is not the sort of confinement that is incidental to robbery.
The binding of the victims also satisfies the second prong of Faison. We conclude that the confinement was not of a sort inherent in a robbery because it was not necessary to tie up the victims in order to commit the robbery. Indeed, [the defendant] would have been convicted of robbery even in the absence of evidence that the victims had been tied up.
With respect to the third prong of Faison, it is clear that the binding of the victims was a confinement with independent significance from the underlying felony in that it substantially reduced the risk of detection. We cannot see why [the robbers] left the apartment with the victims still bound, if not for the purpose of making a clean getaway. The fact that [one victim] freed himself shortly after the robbers left does not negate this finding as to his confinement. As we stated in Ferguson v. State, 533 So.2d 763, 764 (Fla.1988),
the determination of whether the confinement makes the other crime substantially easier of commission or substantially lessens the risk of detection does not depend upon the accomplishment of its purpose. The question is whether the initial confinement was intended to further either of these objectives.
668 So.2d at 969-70 (emphasis added).
Berry's prong-by-prong analysis applies equally here. Applying Faison's first *549 prong to the instant case, the confinement accompanying the robbery here was not slight, inconsequential, and merely incidental to the robbery. That is because the confinement did not cease "naturally" with the robbery. Id. at 969. Rather, the confinement ceased "unnaturally" because the victim's sister and her friend, and then the police, interrupted the robbers, causing them to untie the victim and take the pillow case off his head.
The binding of the victim and the covering of his head also satisfies Faison's second prong. The confinement was not of a sort inherent in a robbery because it was not necessary to tie up the victim and put a pillow case over his head to commit the robbery. Indeed, the defendant would have been convicted of robbery even in the absence of this evidence.
Regarding Faison's third prong, it is clear that the binding of the victim and the covering of his head was a confinement with independent significance from the robbery in that it made the robbery substantially easier of commission and substantially lessened the risk of detection. The fact that the victim's sister and her friend, and then the police, interrupted the robbers, causing them to untie the victim and take the pillow case off his head, does not negate this finding as to the robbers' intent for the initial confinement. As the court stated in Berry: "`The question is whether the initial confinement was intended to [make the other crime substantially easier of commission or substantially lessens the risk of detection].'" 668 So.2d at 970 (quoting Ferguson, 533 So.2d at 764) (emphasis added). "[T]he success of the confinement is not an integral part of the test." Berry, 668 So.2d at 970 (emphasis added).
The majority in this case attempts to characterize Berry as "seem[ing] to indicate that whether the victim remains confined after the completion of the underlying crime can suggest whether the first and third prongs of the Faison test have been satisfied." Respectfully, I see no such indication in Berry. In fact, Berry's discussion of the third prong appears to have held to the contrary: "The question is whether the initial confinement was intended to [make the other crime substantially easier of commission or substantially lessens the risk of detection]." Id. at 970 (quoting Ferguson, 533 So.2d at 764) (emphasis added). "[T]he success of the confinement is not an integral part of the test." Berry, 668 So.2d at 970 (emphasis added).
The majority also states that its decision is guided by this court's recent decision in Lewis, which presents a closer factual situation to this case than does Berry. However, I conclude that, regardless of the factual similarity, this court incorrectly decided Lewis by not conducting a prong-by-prong analysis as the supreme court did in Berry.
In Lewis, the defendant entered a check cashing store and told the manager that he was robbing the store. The defendant pulled a gun, took the manager to a bathroom, handcuffed her, and threatened to shoot her. The defendant went to lock the front door, and while he stepped away, the manager hit a silent panic button. As the defendant attempted to gain access to the safe, another woman came to the store. The defendant opened the door for her, relocked the door, told the woman that it was a hold-up, and ordered her to lie on the floor next to the manager. The police arrived shortly thereafter and telephoned the store. The defendant wanted the manager to tell the police that the situation was normal, but he could remove only one handcuff from her. So he told the second woman to go to the police and tell them everything was fine. The woman ran out *550 of the store and told police that the defendant was inside with a gun and had the manager in handcuffs. Officers surrounded the building. The defendant ran into the bathroom and escaped by climbing through the ceiling. When the manager heard a crash from the bathroom, she ran out of the store. The police later found the defendant hiding in a neighboring building. He was convicted of several charges, including attempted robbery with a firearm and armed kidnapping with a firearm.
This court reversed the defendant's kidnapping conviction. In doing so, this court quoted Faison's three-prong test, but did not conduct a prong-by-prong analysis. Instead, this court reviewed various cases and issued two rules of law separate from the three-prong test. The first rule is: "The act of moving a victim from one room to another during the case is insufficient to establish a kidnapping separate and distinct from the robbery." Lewis, 50 So.3d at 88 (citing Wilcher v. State, 647 So.2d 1013 (Fla. 4th DCA 1994), and Walker v. State, 604 So.2d 475 (Fla.1992)). The second rule is: "[A] kidnapping charge cannot stand where the victim's confinement ceases when the accompanying crime ends." Lewis, 50 So.3d at 88 (citing Russell v. State, 874 So.2d 1256 (Fla. 4th DCA 2004), and Berry). This court then reversed the defendant's kidnapping conviction based on the following reasoning:
In the present case, the appellant ordered [the manager] into a different room of the store, the bathroom, so that the appellant could lock the front door. Shortly thereafter, the appellant ordered [the manager] to lie on the floor by the safe. The appellant eventually also unlocked one of the handcuffs on [the manager] so that neither victim was bound or barricaded when the appellant fled the store. [The manager's] confinement "ceased naturally" with the end of the robbery, as she was free to exit the store when the appellant climbed through the bathroom ceiling.
In conclusion, the evidence as it related to the kidnapping did not satisfy the "test enunciated in Faison and the trial court erred in denying the motion for judgment of acquittal on the kidnapping charge." Russell, 874 So.2d at 1259.
Lewis, 50 So.3d at 88.
Respectfully, if this court had conducted a prong-by-prong analysis in Lewis, then the result in Lewis may have been different. Applying Faison's first prong to Lewis, the confinement accompanying the robbery there was not slight, inconsequential, and merely incidental to the robbery. That is because the confinement did not cease "naturally" with the robbery. Berry, 668 So.2d at 969. Rather, the confinement ceased "unnaturally" because the police interrupted the robber, causing him to partially unlock the handcuffs on the manager before he fled.
The handcuffing of the manager in Lewis also satisfies Faison's second prong. The confinement was not of a sort inherent in a robbery because it was not necessary to handcuff the manager to commit the robbery. Indeed, the defendant would have been convicted of attempted robbery even in the absence of this evidence.
Regarding Faison's third prong, it is clear that the handcuffing of the manager in Lewis was a confinement with independent significance from the robbery in that it made the robbery substantially easier of commission. The fact that the police interrupted the robber, causing him to partially unlock the handcuffs, does not negate this finding as to the robber's intent for the initial confinement. As the court stated in Berry: "`The question is whether the initial confinement was intended to [make the other crime substantially easier *551 of commission or substantially lessens the risk of detection].'" 668 So.2d at 970 (quoting Ferguson, 533 So.2d at 764) (emphasis added). "[T]he success of the confinement is not an integral part of the test." Berry, 668 So.2d at 970 (emphasis added).
As this court did in Lewis, the majority in this case appears to have added another new rule separate from Faison's three-prong test. Whereas the second rule issued in Lewis is that "a kidnapping charge cannot stand where the victim's confinement ceases when the accompanying crime ends," 50 So.3d at 88 (emphasis added), the majority in this case now appears to also hold that a kidnapping charge cannot stand where the victim's confinement ceases before the accompanying crime ends. See majority op. at 547 ("[B]ecause the confinement ceased prior to completion of the robbery, the evidence does not support an independent kidnapping conviction.") (emphasis added). I see no authority in the supreme court's precedent for the majority's new rule or the two rules which this court issued in Lewis.
The majority in this case also seeks to avoid the supreme court's plain language in Berry that Faison's first prong, when applied to a robbery, may be determined based on whether the confinement accompanying the robbery would "cease naturally" with the robbery. Berry, 668 So.2d at 969 (emphasis added). According to the majority, "the operable word is `cease,' whether it is natural or not," and "[w]hether that cessation was natural is of no import." Majority op. at 546 and 547. Again, I see no authority in the supreme court's precedent suggesting that its use of the word "naturally" is of no import. We are bound to give effect to the word "naturally" rather than discarding its plain meaning. Applying the plain meaning here, the confinement did not cease "naturally" with the robbery. Rather, the confinement ceased "unnaturally" because the victim's sister and her friend, and then the police, interrupted the robbers, causing them to untie the victim and take the pillow case off his head.
In sum, Faison's three-prong test still controls and should be applied with a prong-by-prong analysis as the supreme court did in Berry. Having applied the three-prong test with a prong-by-prong analysis here, I conclude that competent, substantial evidence exists to find that the robbers' confinement of the victim here amounted to a kidnapping. We should affirm the defendant's kidnapping conviction, and we should recede en banc from Lewis to the extent Lewis issued two rules which are separate from Faison's three-prong test.
NOTES
[1] The defendant also argued the following points: (1) defense counsel was ineffective for failing to move for a mistrial based on a discovery violation; (2) because the jury found the defendant did not possess a firearm for counts 1, 3, and 4, the court erred in enhancing the penalty for these counts; (3) enhancement on all counts must be reversed because the jury found the defendant did not possess a firearm during the commission of the burglary; (4) resentencing is mandated on all counts if any of the convictions are vacated; (5) the court failed to instruct the jury that a burglary conviction could not stand if the defendant was invited into the apartment; and (6) the court improperly limited the defendant's cross-examination of witnesses.
[2] It is, then, an established rule to abide by former precedents, stare decisis, where the same points come again in litigation, as well to keep the scale of justice steady, and not liable to waver with every new judge's opinion, as also because, the law in that case being solemnly declared, what before was uncertain and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter according to his private sentiments; he being sworn to determine, not according to his own private judgment (m), but according to the known laws of the landnot delegated to pronounce a new law, but to maintain the old (n)jus dicere et non jus dare (o).

Maule, 68 So.2d at 183 (quoting Herbert Broom, A Selection of Legal Maxims, Classified and Illustrated, 118 (Herbert F. Manisty & Herbert Chitty eds., 7th ed. 1900)).
[3] The trial court may, but is not required to, consider the sentences imposed on the other charges in light of this decision.